UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
_____

JOSEPH WILLIAMS,

                        **Plaintiff,**

  -vs-                                                 9:15-CV-427 (TJM/CFH)

EUGENE CONWAY ONONDAGA COUNTY SHERIFF;
ONONDAGA COUNTY; ONONDAGA COUNTY
SHERIFF'S OFFICE; ESTEBAN GONZALEZ CHIEF
CUSTODY DEPUTY ONONDAGA COUNTY JUSTICE
CENTER; THOMAS MCDOWELL SERGEANT
ONONDAGA COUNTY JUSTICE CENTER; JOHN
HINTON DEPUTY ONONDAGA COUNTY JUSTICE
CENTER,

                        **Defendants.**
_____

**THOMAS J. McAVOY,**
Senior United States District Judge

**DECISION & ORDER**

**I.****INTRODUCTION**

On April 10, 2015, Plaintiff Joseph Williams, a pretrial detainee at the Onondaga County Justice Center ("the jail") who is completely deaf and uses American Sign Language (ASL) to communicate, brought this action against defendants alleging violations of Title II, 42 U.S.C. § 12132, of the Americans With Disabilities Act ("ADA"); Section 504 of the Rehabilitation Act of 1973, 29 U.S.C. § 794; the Sixth Amendment of the United States Constitution; Article 1, Section 6 of the New York State Constitution; and New York State Human Rights Law N.Y. Exec. Law §296(2)(a). Compl. dkt. # 1, ¶¶ 1-2. Plaintiff asserts

that the defendants discriminated against him on the basis of his disability by failing to provide him with a sign language interpreter so he could have meaningful access to the grievance program, the GED program, and the drug treatment program at the jail; by failing to offer him accommodations so that he could effectively access the phone system at the jail; and by retaliating against him for asserting his rights under the ADA. Id. ¶ 2. Plaintiff further contends that defendants violated his right to counsel by "denying his use of TeleTypewriter (TTY) phone services during business hours in order to communicate with his attorney." Id. ¶ 3. In the Complaint, plaintiff "seeks injunctive relief to compel the jail to provide him with reasonable accommodations to ensure he has meaningful access to existing programs, services, activities at the jail, as well as access to counsel. He also seeks damages for the discrimination he has suffered and will continue to suffer from while incarcerated at the jail." Id. ¶ 4.

On April 21, 2015, plaintiff filed an application for an Order to Show Cause ("OSC")[1]

---

[1] Plaintiff seeks an order requiring defendants to show cause why

an order should not issue pursuant to Federal Rule of Civil Procedure 65 enjoining Defendants to:

a. Provide Mr. Williams with appropriate reasonable accommodations to access Onondaga County Justice Center (hereinafter the jail) programs and services, including a sign language interpreter during the GED and drug treatment programs;

b. provide Mr. Williams with meaningful access to the TTY phone so as to have a means of communication with his family and attorney;

[and]

c. enact polices and/or directives ensuring qualified inmates with hearing impairments have reasonable accommodations including but not limited to sign language interpreters during interactive programs.

Dkt. # 6-1.

and a Temporary Restraining Order ("TRO").[2] In support of that application, plaintiff filed an affidavit, an attorney affirmation, and a memorandum of law. Dkt. # 6. On April 22, 2015, plaintiff served the papers in support of the OSC/TRO application on the Onondaga County Attorney's Office. Dkt. # 8. The Onondaga County Attorney's Office has entered an appearance for Onondaga County, Onondaga County Sheriff's Office, and "Defendants in their official capacities," dkt. # 7, but has not responded to the OSC/TRO application.

For the reasons that follow, the application for an OSC and a TRO is denied.

## II.   DISCUSSION

### a.   Order to Show Cause application

Northern District of New York Local Rule 7.1(e) provides:

> [A] motion brought by Order to Show Cause must include an affidavit clearly and specifically showing good and sufficient cause why the standard Notice of Motion procedure cannot be used. Reasonable advance notice of the application for an Order to Show Cause must be given to the other parties, except in those circumstances where the movant can demonstrate, in a detailed and specific affidavit, good cause and substantial prejudice that would result from the requirement of reasonable notice.

Plaintiff has failed to provide an affidavit clearly and specifically showing good and sufficient cause why the standard Notice of Motion procedure cannot be used. The impetus for plaintiff's application is defendants' failure to provide appropriate hearing-impaired

---

[2] Plaintiff seeks a Temporary Restraining Order requiring defendants to:

> . . . provide Mr. Williams with access to the TTY phone system every day for a minimum of thirty minutes at a time;
>
> . . . provide Mr. Williams with a certified sign language interpreter in the event he requires the attention of the medical or mental health staff at the jail; and
>
> . . . provide Mr. Williams with a sign language interpreter so that he may participate in the drug treatment and GED programs offered by the jail.

Dkt. # 6-1.

3

accommodations at the Onondaga County Justice Center ("the jail"), where plaintiff has been a pretrial detainee since November 2014.  See Williams Aff., ¶ 7.  Through the instant application, plaintiff seeks to "gain equal access to Defendants' programs, services and activities, as well as to live an independent and self-sufficient life while in their custody." Cotter Affirm., ¶ 3; see also id. ¶ 15 ("The lack of reasonable and necessary accommodations throughout his stay at the jail have effectively prevented Mr. Williams from meaningfully participating in any of the programs and services offered at the facility, and isolated him from fellow detainees and staff.  Because of his inability to effectively communicate with the outside world, he has likewise been isolated from his family, friends and counsel.").  But plaintiff has not provided a valid reason why the resolution of this situation, which has existed for more than four months, requires expedited consideration. The fact that he feels "isolated" from his fellow inmates, family, friends, and counsel, and is unable to participate in programs and services offered by the jail, see Cotter Affirm., ¶ 16 ("The fact that, since November of 2014, Mr. Williams has been suffering and continues to be isolated from his fellow inmates and unable to participate in programs and services offered by the jail necessitated the filing of this action and bringing this motion for preliminary relief by Order to Show Cause."), is not a sufficient reason to justify the issuance of an order to show cause.

      The Court is given pause by allegations in the Complaint that could be construed as a claim that plaintiff has been denial of access his criminal defense attorney, and by the allegations in his affidavit that he had difficulty communicating with the jail's nurse during his intake examination.  With regard to communications with his attorney,  a careful reading of the Complaint indicates that plaintiff has not alleged a complete denial of this access.

4

Rather, he asserts that because the jail's policy allows him to "use the TTY phone only on Tuesday and Thursday evenings and only for approximately ten minutes at a time," Compl. ¶ 26, "he has been unable to effectively communicate with his family or his attorney." Id. ¶ 27 (emphasis added); see also Pl. Mem. L. p. 4 ("Mr. Williams is limited to using the TTY phone twice a week on Tuesday and Thursday evenings for a period of about ten minutes at a time. He does not have access to the phone during the daytime or weekends. This severely limits Mr. Williams' ability to effectively communicate with his family and his attorney. Non-hearing impaired inmates have essentially unfettered access to the phones located on their pods as long as they pay the associated fees.")(emphasis added, citations to plaintiff's affidavit omitted).  Plaintiff does not allege that he has been denied access to his criminal defense attorney in person or through written communication.  Further, he submitted an affidavit in support of the instant application thereby indicating that he is able to sufficiently communicate with his attorneys.

With regard to his communications with the jail's nurse, plaintiff asserts in his affidavit that he was born profoundly deaf and has relied on the use of American Sign Language (ASL) to communicate during his life.  Williams Aff. ¶ 3.  Throughout elementary and high school, he "struggled to learn how to read lips" and "how to read and write in English," but is unable to read and write "in more than a very basic level." Id. ¶¶ 4-6.  He asserts that during his intake medical examination at the jail, he indicated to the nurse "through hand gestures, pointing, and facial expressions" that he was completely deaf.  Id. ¶10. He further asserts:

> Instead of bringing in a sign language interpreter to be able to communicate with me the nurse attempted to write things down to me. I kept trying to tell her I cannot read or write well and can only really effectively communicate through ASL. She continually ignored me and eventually just made me go back to the holding cell without completing the medical exam.

Id.

Plaintiff has not asserted, however, that he was denied any necessary medical services, or that he has any physical, mental, or emotional condition that will likely require medical attention in the present or foreseeable future that could not be preliminarily addressed through his basic ability to read lips, read and write in English, or the use of hand gestures, pointing and facial expressions.  The Court does not draw any conclusion as to whether the requested accommodation, or a reasonable alternative, may be  necessary. Rather, the Court indicates only that plaintiff has failed to provided facts demonstrating that he will suffer a likely and imminent injury in the absence of expedited resolution of his motion for injunctive relief.   Thus, the application for an order to show cause is denied.

### b. Temporary Restraining Order

The purpose of a TRO is generally to preserve the status quo for a limited period of time until the Court has the opportunity to pass on the merits of the demand for a preliminary injunction. See Warner Bros. Inc. v. Dae Rim Trading, Inc., 877 F.2d 1120, 1125 (2d Cir. 1989).  Courts often apply the preliminary injunction standard when addressing a request for a TRO.  See Andino v. Fischer, 555 F. Supp.2d 418, 419 (S.D.N.Y. 2008) ("It is well established that in this Circuit the standard for an entry of a TRO is the same as for a preliminary injunction.").

A preliminary injunction is an extraordinary measure that should not be routinely granted.  Twentieth Century Fox Film Corp. v. Marvel Enterp., Inc., 277 F.3d 253, 258 (2d Cir. 2002); Christie-Spencer Corp. v. Hausman Realty Co, Inc., 118 F.Supp.2d 408, 418 (S.D.N.Y. 2000).  It has been said that it is "one of the most drastic tools in the arsenal of judicial remedies." Hanson Trust PLC v. SCM Corp., 774 F.2d 47, 60 (2d Cir. 1985).

The burden rests with the plaintiff to establish that he is entitled to the relief sought. Forest City Daly Housing, Inc. v. Town of North Hempstead, 175 F.3d 144, 149 (2d Cir. 1999). Under the traditional test for a preliminary injunction or TRO that seeks to maintain the status quo, a plaintiff must show "(a) irreparable harm and (b) either (1) likelihood of success on the merits or (2) sufficiently serious questions going to the merits ... and a balance of hardships tipping toward the party requesting preliminary relief." Christian Louboutin S.A. v. Yves Saint Laurent America Holding, Inc., 696 F.3d 206, 215 (2d Cir.2012) (internal quotations and citations omitted); see N.A.A.C.P., Inc. v. Town of East Haven, 70 F.3d 219, 223 (2d Cir. 1995)("[A] party seeking a preliminary injunction must demonstrate '(1) irreparable harm should the injunction not be granted, and (2) either (a) a likelihood of success on the merits, or (b) sufficiently serious questions going to the merits and a balance of hardships tipping decidedly toward the party seeking injunctive relief.'")(quoting Resolution Trust Corp. v. Elman, 949 F.2d 624, 626 (2d Cir. 1991));[3] see also Jackson Dairy Inc. v. H.P. Hood & Sons, Inc., 596 F.2d 70, 72 (2d Cir. 1979).

"When the movant seeks a 'mandatory' injunction - that is, as in this case, an injunction that will alter rather than maintain the status quo - [he] must meet the more rigorous standard of demonstrating a 'clear' or 'substantial' likelihood of success on the merits." Doninger v. Niehoff, 527 F.3d 41,47 (2d Cir. 2008) (citations omitted). "[A] mandatory injunction should issue only upon a clear showing that the moving party is entitled to the relief requested, or where extreme or very serious damage will result from a denial of preliminary relief." Tom Doherty Assocs., Inc. v. Saban Entertainment, Inc., 60

---

[3] The "'serious questions' prong is also frequently termed the 'fair ground for litigation' standard." East Haven, 70 F.3d at 223.

F.3d 27, 34 (2d Cir. 1995)(internal quotation omitted).  "Such relief is granted sparingly ...." Christie-Spencer Corp., 118 F. Supp.2d at 418 (citing Tom Doherty Assocs., 60 F.3d at 33-34).

### 1. Irreparable Harm

"'Perhaps the single most important prerequisite for the issuance of a preliminary injunction is a demonstration that if it is not granted the applicant is likely to suffer irreparable harm before a decision on the merits can be rendered.'" Bell & Howell: Mamiya Co. v. Masel Supply Co., 719 F.2d 42, 45 (2d Cir. 1983)(quoting 11 C. Wright & A. Miller, *Federal Practice and Procedure* § 2948, at 431 (1973) (footnote omitted)).  "A moving party must show that the injury it will suffer is likely and imminent, not remote or speculative, and that such injury is not capable of being fully remedied by money damages." National Association for Advancement of Colored People, Inc. (NAACP) v. Town of East Haven, 70 F.3d 219, 224 (2d Cir. 1995)(citing Tucker Anthony Realty Corp. v. Schlesinger, 888 F.2d 969, 975 (2d Cir. 1989)); Christie-Spencer Corp., 118 F. Supp.2d at 418 ("The threat of injury must be 'actual and imminent,' not remote or speculative, and not easily compensated by monetary damages.")(quoting Forest City Daly Housing, Inc., 175 F.3d at 153).

The injuries that plaintiff alleges he suffers because of defendants' actions - denial of "meaningful participation" in the programs and services offered at the jail; a feeling of isolation from fellow detainees, family, friends, and counsel; and denial of telephone services equal to that offered to non-hearing impaired inmates - are the type of injuries that are capable of monetary compensation under the claims made in this case.  While a violation of a constitutional right, such as denial of a pre-trial detainee's access to his

criminal defense attorney, would constitute irreparable harm, plaintiff has not alleged facts demonstrating such a denial.  Rather, as explained above, plaintiff alleges that his ability to communicate with his attorney is limited in comparison with non-hearing impaired inmates, but he has not alleged that he has been prevented this communication.  Likewise, to the extent plaintiff seeks an injunction requiring "a certified sign language interpreter in the event he requires the attention of the medical or mental health staff at the jail," an injury arising from the lack of a sign language interpreter is, on this record, too remote and speculative to support a finding that irreparable harm will occur in the absence of a temporary restraining order.

Plaintiff has failed to sufficiently demonstrate that he will suffer irreparable harm in the absence of a temporary restraining order.   Accordingly, the application for a temporary restraining order is denied.

## III.    CONCLUSION

For the reasons set forth above, plaintiff's application for an Order to Show Cause and a Temporary Restraining Order [dkt. # 6] is DENIED.  To the extent plaintiff seeks a preliminary injunction, he may place the motion on one of the Court's regularly scheduled motion return dates and provide notice to the defendants in accordance with the Local Rules of the Northern District of New York.

**IT IS SO ORDERED**.

Dated: April 24, 2015

*Thomas J. McAvoy*
Thomas J. McAvoy
Senior, U.S. District Judge

9