UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - -
JOSEPH WILLIAMS,

        Plaintiff,

        v.                                                                                           9:15-cv-427

EUGENE CONWAY, Onondaga County
Sheriff; ONONDAGA COUNTY; ONONDAGA
COUNTY SHERIFF'S OFFICE; ESTEBAN
GONZALEZ, Chief Custody Deputy, Onondaga
County Justice Center; THOMAS MCDOWELL,
Sergeant, Onondaga County Justice Center;
JOHN HINTON, Deputy, Onondaga County Justice
Center,

        Defendants.
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - -
THOMAS J. McAVOY
Senior United States Judge

## **DECISION and ORDER**

Before the Court is Plaintiff Joseph Williams' motion for class certification pursuant to Rule 23 of the Federal Rules of Civil Procedure. Plaintiff alleges Defendant Onondaga County Justice Center discriminated against him because of his disability in violation of the Americans With Disabilities Act ("ADA"), 42 U.S.C. § 12132 et seq., Section 504 of the Rehabilitation Act of 1973 ("RA"), 29 U.S.C. § 701 et seq., and the First and Sixth Amendments of the United States Constitution. Defendant has opposed the motion. The Court has considered the motion on submissions without oral argument.

**I.    Background**

Plaintiff is a profoundly deaf individual who communicates almost exclusively

through American Sign Language ("ASL").  Complaint ("Complt."), dkt. # 1, at ¶ 7.
Plaintiff has been deaf his entire life.  Id. at ¶ 14.  Since his primary language is ASL, he
has difficulty reading and writing.  Id. at ¶ 17.  Plaintiff was incarcerated in the
Onondaga County Justice Center in November 2014 pending disposition of a state
criminal case.  Affidavit of Joseph Williams in Support of Motion for Preliminary
Injunction ("Plaintiff's Affidavit"), dkt. # 6-1, at ¶ 7.[1]  Plaintiff's Complaint alleges that
Defendants discriminated against him by failing to provide him with reasonable
accommodations while he was incarcerated.

Plaintiff alleges that Defendants failed to provide him with an interpreter and did
not inform him of his rights under the ADA when he arrived at the jail and underwent the
intake process.  Complt. at ¶ 19.  Plaintiff further claims that Defendant denied him his
right to participate in educational and drug treatment programs offered by the jail
because Defendant did not make an ASL interpreter available.  Id. at ¶¶ 22-23.
Further, Plaintiff alleges that while non-hearing-impaired inmates in the jail have
"essentially unfettered access" to telephones, he was not allowed to use the Jail's TTY
(text) telephone for more than a few minutes at a time, and in the evenings only.  Id. at
¶¶ 27-28.  This practice made it more difficult for Plaintiff to communicate with his
attorney and his family.  Id.

On March 16, 2015, Plaintiff filed a grievance regarding his lack of access to
programs and facilities with the help of another inmate.  See dkt. # 19-3.  Plaintiff filed
his Complaint in this matter on April 10, 2015.  See Complt.  Plaintiff's Complaint

---

[1]Plaintiff has been incarcerated at the Onondaga County Justice Center multiple times since 1995 for periods ranging between 1 day and 3 months.  See dkt. # 19-2.

sought: (1) a declaratory judgment finding violations of the ADA and the RA; (2) an order compelling Defendant to provide Plaintiff with "appropriate reasonable accommodations"; (3) an order compelling Defendant to enact policies ensuring that hearing-impaired inmates will receive reasonable accommodations for their disabilities; and (4) damages and attorney's fees. Id.

After Plaintiff filed his Complaint the Defendant County sent one of its captains to attend a training entitled "Deaf Access to Justice and Deaf in Prison" held by the National Technical Institute for the Deaf on April 27, 2015. Affidavit of Esteban Gonzalez, dkt. # 19-1 at ¶ 13. Defendants assert that they have now drafted new policies and installed new equipment to facilitate communication for deaf inmates. Id. at ¶ 14.

On April 21, 2015, Plaintiff filed an application for an Order to Show Cause and Temporary Restraining Order. See dkt. # 6. Plaintiff requested that the Court issue a preliminary injunction requiring Defendant to provide Plaintiff with "(1) a sign language interpreter for the General Equivalency Diploma (GED) program and drug treatment program; and (2) access to a teletypewriter ("TTY") phone system or other accessible telephone equipment that is equal to that which non-hearing impaired inmates have . . . pending final decision on the merits." Dkt. # 6-3 at 2. The Court denied the Plaintiff's motion, finding that he had failed to show good cause why he could not use the Court's standard notice of Motion procedure or why the resolution of his situation required expedited consideration. See Dkt. # 9 at 3.

On May 5, 2015, Plaintiff filed an Amended Complaint alleging violations of the ADA, RA, Religious Land Use and Institutionalized Persons Act ("RLUIPA"), 43 U.S.C.

¶ 2000cc, et seq., and the First and Sixth Amendments.  See dkt. # 10.  Plaintiff complained on his own behalf and on behalf of "a class of similarly situated individuals with profound hearing impairments who rely on the use of ASL interpreters to communicate."  Amended Complaint ("Ammnd. Complt."), dkt. # 10, at ¶ 1.  Plaintiff filed the instant motion for class certification on May 13, 2015.  See dkt. # 12.  Plaintiff claims that "class certification is necessary to preserve the rights of other proposed class members . . . because Defendants' refusal to comply with the requirements of the ADA and [RA] is a system-wide problem that threatens the civil rights of every deaf or hard-of-hearing inmate who will be incarcerated at the jail in the future."  Plaintiff's Brief in Support of Motion for Class Certification ("Plaintiff's Brief"), dkt. # 12-1, at 3.  The parties then briefed the issue, bringing the matter to its present posture.

## II.  LEGAL STANDARD

Plaintiff moves for class certification pursuant to Rule 23 of the Federal Rules of Civil Procedure.  Rule 23(a) provides that a court may certify a class only if:

> (1) the class is so numerous that joinder of all members is impracticable;
> (2) there are questions of law or fact common to the class;
> (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and
> (4) the representative parties will fairly and adequately protect the interests of the class.

FED. R. CIV. P. 23(a).  "The party seeking class certification bears the burden of establishing by a preponderance of the evidence that each of Rule 23's requirements have been met.  Myers v. Hertz Corp., 624 F.3d 537, 547 (2d Cir. 2010).

## III.  ANALYSIS

The Court will address each element of class certification in turn.

### A. Numerosity

Plaintiff must first demonstrate that "the class is so numerous that joinder of all members is impraticable[.]" FED. R. CIV. P. 23(a)(1). "The numerosity requirement requires examination of the specific facts of each case and imposes no absolute limitations." General Tel. Co. v. EEOC, 446 U.S. 318, 330 (1980). To satisfy this requirement, a plaintiff "must show some evidence of or reasonably estimate the number of class members but need not show the exact number." Robidoux v. Celani, 987 F.2d 931, 935 (2d Cir. 1993) (internal quotation omitted). "Numerosity is presumed at a level of 40 members[.]" Consolidated Rail Corp. v. Town of Hyde Park, 47 F.3d 473 483 (2d Cir. 1995).

Plaintiff proposes a class of "all present and future deaf and hearing-impaired prisoners of the Onondaga County Justice Center who have been, are, or will be discriminated against, solely on the basis of their disability, in receiving the rights and privileges accorded to all other prisoners." Plaintiff's Brief at 4. Plaintiff relies on various statistics to estimate the number of class members. First, Plaintiff points to a "Sheriff's Office Annual Report" which states that more than 10,000 inmates were incarcerated at the Jail annually between 2009 and 2011." Affidavit of Joshua T. Cotter ("Cotter Affidavit"), dkt. # 12-2, at ¶ 4. He then cites a 2002 Bureau of Justice Statistics report that indicates approximately six percent of the local jail population has a hearing impairment. Id. at ¶ 10. "About 6% of jail inmates reported difficulty hearing a normal conversation even when wearing a hearing aid." See Exh. C to Cotter Affidavit, at 12. Using those statistics, Plaintiff estimates that approximately 600 with a hearing impairment are incarcerated at the jail each year. Plaintiff's Brief at 6.

5

Plaintiff also estimates that approximately 70 "profoundly deaf" persons have been incarcerated at the jail within the past five years. Id. at 6. In support of this claim, Plaintiff points to a 2005 Gallaudet University study that finds that 0.14% of the U.S. population is profoundly deaf and utilizes a sign language interpreter. Cotter Affidavit at ¶ 17. Concluding that approximately 50,000 inmates were incarcerated at the jail in the previous five years (10,000 inmates per year), 0.14% of those inmates, or 70, were profoundly deaf and required a sign language interpreter. Plaintiff's Brief at 7.

Defendants dispute these calculations, arguing that "the data which approximates that 0.14% of the entire U.S. population is profoundly deaf fails to . . . separate deaf adults who communication through ASL" from children. Defendants' Brief in Opposition to Plaintiff's Motion for Class Certification ("Defendants' Brief"), dkt. # 19-5, at 3. Defendants argue this statistic is flawed because it includes children who "cannot be detained/housed in a[n] adult facility." Id. "Further, Plaintiff presumes that each of these individuals would be likely to be charged with a crime and lodged in a local jail[.]" Id.

The Court finds that Plaintiff's calculations "reasonably estimate the number of class members[.]" Robidoux, 987 F.2d at 935. Determining numerosity depends on 'all the circumstances surrounding a case, not on mere number[,]" including "requests for prospective injunctive relief which would involve future class members." Id at 936 (citing Demarco v. Evans, 390 F.2d 836, 845 (2d Cir. 1968)). "The class action device is particularly well-suited in actions brought by prisoners due to the 'fluid composition' of the prison population . . . [and] generally tend[s] to be the norm in actions such as this." Clarkson v. Coughlin, 783 F.Supp. 789, 797 (S.D.N.Y. 1992) (certifying class of deaf

prisoners who were allegedly denied ASL interpreters and other accommodations) (citing Jones v. Smith, 784 F.2d 149, 151 (2d Cir. 1986)); see also, Andre H. by Lula H.v. Ambach, 104 F.R.D. 606 (S.D.N.Y. 1985) (certifying class of "all current and future residents" of a juvenile justice center who were "handicapped and in need of special education and related services"); Siddiqi v. Regents of University of California, No. C99-0790, 2000 WL 33190435 (N.D. Cal. Sept. 6, 2000) (certifying class consisting of all past and future deaf and hard-of-hearing students enrolled at a university).

Plaintiff's calculations demonstrate that 0.14% of the U.S. population is profoundly deaf, and that Defendants incarcerate approximately 50,000 inmates over a five-year period. Plaintiff's conclusion that 0.14% of those 50,000 inmates were or are profoundly deaf is reasonable. Plaintiff's estimate does not presume–as Defendants assert–that the entire 0.14%-segment of the U.S. population which is profoundly deaf will be "charged with a crime and lodged in a local jail." Defendants' Brief at 3. Instead, Plaintiff simply assumes that, as with the total United States population, 0.14% of prisoners at any one time will be profoundly deaf. Such an assumption is statistically reasonable.

Defendants' argument that Plaintiff cannot demonstrate numerosity because he "fails to . . . separate the deaf adults who communicate through ASL" from children is equally unpersuasive. Plaintiff need not show the exact number of class members. Robidoux, 987 F.2d at 935. Moreover, Defendants' implication that failing to separate adults from children in Plaintiff's estimate of profoundly deaf people in the United States yields a higher percentage of profoundly deaf adults than actually exist in the population defies logic. Presumably, not everyone in the United States who is profoundly deaf has

7

been profoundly deaf since childhood.  A much better assumption would be that over time, the percentage of people in any given age group who are profoundly deaf grows, as people experience illness, accidents, and other events which cause them to lose the hearing they were born with.  Indeed, Plaintiff presents evidence indicating that more than half of the people in the United States who are deaf or profoundly hard of hearing developed that condition late in life.  See Exh. D to Cotter Affidavit, at 1.  These considerations, in combination with the fact that Plaintiff need not show the exact number in the class, defeats Defendants' argument.

Moreover, Plaintiff's estimate that 600 hearing-impaired individuals were housed at the jail during a five-year period adds to the size of the class even if not all of those 600 required an accommodation.  The Court cannot know with certainty how many of the 600 hearing-impaired individuals required an interpreter or other accommodation, but assuming that at least some portion of the 600-hearing-impaired prisoners required an interpreter and others required another accommodation not provided, Plaintiff's estimate favors numerosity.  See, e.g., Siddiqi, 2000 WL 33190435 at *5 (aggregating the claims of deaf and hearing-impaired students for numerosity purposes).

Since courts presume numerosity at 40 class members, Plaintiff's reasonable estimate of 70 members satisfies the numerosity requirement.  See Consolidated Rail Corp., 47 F.3d at 483.

### B.    Commonality and Typicality

Certification also requires Plaintiff to meet the commonality and typicality requirements of Rules 23(a)(2) and 23(a)(3).  To meet these requirements, the Plaintiff must show that "there are questions of law or fact common to the class [and that his]

claims or defenses . . . are typical of the claims or defenses of the class[.]"  FED. R. CIV. P. 23(a)(2)-(3).  "The commonality and typicality requirements tend to merge into one another," and courts may consider them together.  Marisol A. v. Giuliani, 126 F.2d 372, 376 (2d Cir. 1997).  "The commonality requirement is met if plaintiffs' grievances share a common question of law or of fact."  "Typicality . . . requires that the claims of the class representatives be typical of those of the class, and 'is satisfied when each class member's claim arises from the same course of events, and each class member makes similar legal arguments to prove the defendant's liability.'"  Id.  (quoting in re Drexel Burnham Lambert, 960 F.2d 285, 291 (2d Cir. 1992)).

Plaintiff argues that the commonality requirement is satisfied because "the common contention among the class [is] the jail's failure to [provide reasonable accommodations] to deaf and hard of hearing prisoners" violates federal law.  Plaintiff's Brief at 7-8.  Plaintiff argues that there are a number of questions of law and fact common to the class, namely whether the jail's alleged failure to provide reasonable accommodations violates the ADA, the RA and the United States Constitution.  Id. at 8.  Likewise, Plaintiff argues, typicality is satisfied because "each class member's claim arises from the practice or policy of the Defendants, and the class members raise similar legal challenges to the defendants' conduct."  Id. at 9.  Plaintiff also argues that Defendants' conduct in "refus[ing] to supply proposed class members with necessary auxiliary aids and services to have access to programs, services and benefits offered at the jail" affects all class members, thus demonstrating typicality.  Id.

Defendants reply that Plaintiff cannot demonstrate commonality or typicality because the jail has enacted policies and installed equipment to facilitate

9

communication for deaf or hard-of-hearing inmates. Defendants argue that any future inmates with hearing issues "will not share the same course of events as Plaintiff or the same legal arguments." Defendants' Brief at 4. Defendants' argument, at least to a degree, addresses the ultimate merits of the action. "Merits questions may be considered [only] to the extent that they are relevant to determining whether the Rule 23 prerequisites for class certification are satisfied." Amgen Inc. v. Connecticut Retirement Plans and Trust Fund, 133 S.Ct. 1184, 1195 (2013) (citing Wal-mart Stores, Inc. v. Dukes, 131 S.Ct. 2541, 2552 n.6 (2011) ("a district court has no 'authority to conduct a preliminary inquiry into the merits of a suit' at class certification unless it is necessary 'to determine the propriety of certification[.]'") (citations omitted)).

Though Defendants may have implemented improvements in providing services for persons with hearing problems, the record does not indicate whether those improvements actually rectify the alleged inadequacies at the Jail. To hold that Plaintiff has failed to demonstrate commonality and typicality because of Defendants' subsequent measures would improperly address the merits of the case. Such a finding would constitute a decision on the merits unnecessary to a ruling on the certification motion and would exceed the Court's authority on the issue.

The Court therefore finds that Plaintiff has satisfied the commonality and typicality requirements of Rule 23(a)(2) and (3). The jail's alleged failure to provide class members with services for the deaf and hearing-impaired provides the basis for the putative class members' claims. Therefore, the "plaintiffs' grievances share a common question of law or fact" and "[arise] from the same course of events[.]" Marisol, 126 F.3d at 376. Further, assuming Plaintiff could specifically identify other similarly

10

situated class members, the Court assumes that "each class member [would make] similar legal arguments to prove the defendants' liability." Id.

## C. Fair and Adequate Protection of Interests

Plaintiff must also show that he "will fairly and adequately protect the interests of the class." FED. R. CIV. P. 23(a)(4). "[T]he adequacy requirement is twofold: the proposed class representative must have an interest in vigorously pursuing the claims fo the class, and must have no interests antagonistic to the interests of other class members." Denny v. Deutsche Bank AG, 443 F.3d 253, 268 (2d Cir. 2006). Further, "adequacy of representation entails inquiry as to whether . . . plaintiff's attorneys are qualified, experienced and able to conduct litigation." Baffa v. Donaldson, Lufkin & Jenrette Sec. Corp., 222 F.3d 52, 60 (2d Cir. 2000). Defendants point out that Plaintiff is no longer incarcerated and cannot protect the interests of a class because his claims are moot. Defendants' Brief at 5 (citing Beyah v. Coughlin, 789 F.2d 986 (2d Cir. 1986)). Plaintiff counters that "mootness of the representative plaintiff's claims before class certification does not automatically render the action moot." Plaintiff's Brief at 12.

Defendant's reliance on Beyah is misplaced. Beyah did not involve a class action claim and is inapplicable given the definition of the proposed class and the prospective interests of its members. In Beyah, the court mentioned in passing that a plaintiff's transfer from a prison "may well moot claims for declaratory and injunctive relief." 789 F.2d at 968. Here, however, the Plaintiff seeks prospective injunctive relief for all present and future deaf or hearing-impaired inmates housed at the jail. That Plaintiff's personal claims may be moot is inconsequential to this question and resolution of the Plaintiff's claims will address issues unlikely to be addressed by

11

waiting for claims by inmates who will likely face similar difficulties in having their claims timely addressed.  See Gerstein v. Pugh, 420 U.S. 103, 110 n. 11 (1975) ("This case belongs . . . to that narrow class of cases in which the termination of a class representative's claim does not moot the claims of the unnamed members of the class.").  The fact that Plaintiff is no longer incarcerated does not defeat adequacy.

In Gerstein, the United States Supreme Court offered guidance concerning class-action lawsuits brought by pre-trial detainees:

> Pretrial detention is by nature temporary, and it is most unlikely that any given individual could have his constitutional claim decided on appeal before he is either released or convicted.  The individual could nonetheless suffer repeated deprivations, and it is certain that other persons similarly situated will be detained under the allegedly unconstitutional procedures.  The claim, in short, is one that is distinctly "capable of repetition, yet evading review."

420 U.S. at 110 n. 11.  Consistent with this reasoning, the Court finds that Plaintiff cna adequately represent the interests of the putative class of pre-trial detainees, who will likely face similar difficulties in communicating at the Jail and similar difficulties in resolving their complaints in a timely fashion given the short-term nature of their detention and the amount of time typically necessary to resolve cases.  The Court also finds that Plaintiff's attorneys are "qualified, experienced and able to conduct the litigation."  Baffa, 222 F.3d at 60.  The Court therefore finds that Plaintiff has met the requirements of Rule 23(a)(4).

## IV.    CONCLUSION

For the reasons stated above, the Court will GRANT Plaintiff's motion for class certification, dkt. # 12.  The Court certifies a class consisting of "all present and future deaf and hearing-impaired prisoners of the Onondaga County Justice Center who have

12

been, are, or will be discriminated against, solely on the basis of their disability, in receiving the rights and privileges accorded to all other prisoners."

IT IS SO ORDERED

Dated:December 30, 2015

_____
Thomas J. McAvoy
Senior, U.S. District Judge