UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK

JOSEPH WILLIAMS,

                              Plaintiff,

                                                    15-CV-00427 (TJM/CFH)

vs.

EUGENE CONWAY, ONONDAGA COUNTY
SHERIFF, ONONDAGA COUNTY, ONONDAGA
COUNTY SHERIFF'S OFFICE, ESTEBAN
GONZALEZ CHIEF CUSTODY DEPUTY,
ONONDAGA COUNTY JUSTICE CENTER,
THOMAS MCDOWELL SERGEANT ONONDAGA
COUNTY JUSTICE CENTER, JOHN HINTON,
DEPUTY ONONDAGA COUNTY JUSTICE CENTER,

                              Defendants.

## STIPULATION AND ORDER OF SETTLEMENT

**WHEREAS**, Plaintiff, on behalf of the Plaintiff class, as defined by the United States

District Court, Northern District of New York ("Plaintiffs"), commenced and is pursuing a class

action lawsuit entitled Joseph Williams v. Eugene Conway Onondaga County Sheriff, et. al.,

Civil Case No. 15-CV-00427, in United States District Court Northern District of New York,

seeking compensatory, declaratory and prospective injunctive relief for alleged violations of

Title II, 42 U.S.C. §12131-34 of the American with Disabilities Act ("ADA"); Section 504 of the

Rehabilitation Act of 1973, 29 U.S.C. §794; the Religious Land Use and Institutionalized

Persons Act, 42 USC §2000cc et. seq. ("RLUIPA"); the First, Sixth, and Fourteenth

Amendments of the United States Constitution, pursuant to 42 USC §1983; and Article 1,

Section 6 of the New York State Constitution; and

**WHEREAS**, the parties have negotiated in good faith and have agreed to settle this

action on the terms and conditions set forth herein; and

**WHEREAS**, nothing in this settlement agreement shall be construed as an admission of law or fact or acknowledgement of liability, wrongdoing, or violation of law by the Defendants regarding any of the allegations contained in the Amended Complaint in this Action, or as an admission or acknowledgement by Defendants concerning whether Plaintiffs are the prevailing party in the Action by virtue of this settlement agreement;

**NOW, THEREFORE, IT IS HEREBY STIPULATED, AGREED, AND ORDERED as follows:**

1.      The Onondaga County Justice Center shall maintain its teletypewriter ("TTY") phone equipment or other at least as effective/accessible telephone equipment that will enable deaf or hard of hearing detainees/prisoners to communicate with individuals outside of the facility.

2.      The Onondaga County Justice Center shall maintain the "Purple" software programs and compatible equipment or equivalent software programs and equipment that provide Video Relay Services (VRS) and Video Remote Interpreting (VRI) for the deaf and hard of hearing.  Further, in the event that such computer services are unavailable for any reason, Defendants agree to seek the assistance of a live American Sign Language (ASL) interpreter within a reasonable period of time.

3.      The Onondaga County Sheriff's Office shall maintain its Written Directive entitled "Communicating with Deaf and Hard of Hearing Persons" a copy of which is attached hereto as Exhibit A, or an updated/revised version of this policy.  Further, the Onondaga County Sheriff's Office shall train its employees regarding services available for the deaf/hard of hearing in accordance with said policy (Exhibit A) and any revised or subsequent Directive(s)/Policy(s)

-2-

The subscribing parties hereby agree to the above terms.

Dated: June 20, 2016

Legal Services of Central New York, Inc.
Joshua Cotter, of counsel
Samuel Young, of counsel
Fulvia Vargas, of counsel
Attorneys for the Plaintiff Class and
Named Plaintiff Joseph Williams
221 S. Warren St., Suite 300
Syracuse, NY 13202

Dated: May 27, 2016

ROBERT A. DURR
COUNTY ATTORNEY
Carol L. Rhinehart, of counsel
Deputy County Attorney
Bar Roll No. 509096
Attorneys for Defendants
Office & P. O. Address
421 Montgomery St., 10th Floor
Syracuse, New York  13202

SO ORDERED:

Dated:   July 8, 2016

THOMAS J. McAVOY
Senior U.S. District Judge

-4-

| | **Onondaga County Sheriff's Office** **Written Directive** | | |
|---|---|---|---|
| | **Communicating with Deaf and Hard of Hearing Persons** | | |
| **Number:  SHR - 010** | **Date Effective:  09/15/2015** | | **Pages: 8** |
| **Policy** | All ☒ Police ☐ Custody ☐ Civil ☐ | | |
| **Supersedes:** N/A | | | |
| **Authority: Sheriff** | | **Date:** 09/15/2015 | |

## I. POLICY

It is the policy of the Onondaga County Sheriff's Office to carry out specific legal obligations under the Americans with Disabilities Act (ADA) and the Rehabilitation Act of 1973 that ensure a consistently high level of service is provided to all community members, including those who are deaf or hard of hearing.

## II. OBJECTIVE

It is the objective of this policy directive to provide Sheriff's Office staff with the means and methods to communicate effectively with people who are deaf or hard of hearing.

## III. DEFINITIONS

A. Deaf and hard of hearing: Persons having a hearing loss of such severity that communication and learning is primarily by visual methods, or require the use of hearing aids or other assistive listening devices.

B. American Sign Language (ASL): The natural, visual language of people who are deaf. ASL has its own syntax and grammatical structure and is one of the most commonly used foreign languages in the U.S.

1

C. Video Remote Interpreting (VRI): An internet based service that provides two-way audio/video transmittal between a certified sign language and oral interpreter and a deaf or hard of hearing person.

D. Video Relay Service (VRS): A videophone or internet based service that provides three-way communication between a certified sign language and oral interpreter and a deaf or hard of hearing person and a hearing person.

E. Teletypewriter (TTY): A device that transmits and receives typewritten messages over phone lines.

## IV. PROCEDURE

A. People who are deaf or hard of hearing are entitled to a level of service equivalent to that provided to other persons.

B. All Sheriff's Office staff members will make every effort to ensure that they communicate effectively with people who are deaf or hard of hearing. Effective communication with a person who is deaf or hard of hearing involved in an incident, whether as a victim, witness, suspect, or arrestee, is essential in ascertaining what actually occurred, the urgency of the matter, and type of situation.

C. Various types of communication aids, known as "auxiliary aids and services", are used to communicate with people who are deaf or hard of hearing. These include;

1. Use of a qualified sign language or oral interpreter

2. Use of a notepad and pen or pencil to exchange written notes

3. Use of gestures or visual aids to supplement oral communication

4. Use of an assistive listening system or device to amplify sound for persons who are hard of hearing

D. The type of aid that will be required for effective communication will depend on the individual's usual method of communication, and the nature, importance, and duration of the communication at issue.

E. In some circumstances, oral communication supplemented by gestures and visual aids or an exchange of written notes will be an effective means of communicating with people who are deaf or hard of hearing. In other circumstances, a qualified sign language or oral interpreter may be needed to communicate effectively with persons who are deaf or hard of hearing. The more lengthy, complex, and important the communication, the more likely it is that a qualified interpreter will be required for effective communication.

F. To serve each individual effectively, primary consideration should be given to providing the type of communication aid or service requested by the individual. Staff members should find out from the person who is deaf or hard of hearing what type of auxiliary aid or service he or she needs and defer to those expressed choices, unless:

   1. There is another equally effective way of communicating, given the circumstances, length, complexity and importance of the communication, as well as the communication skills of the person who is deaf or hard of hearing

   2. Doing so would fundamentally alter the nature of the law enforcement activity in question

   3. As determined by the Watch Commander, doing so would cause an undue administrative or financial burden

G. People who are deaf or hard of hearing must not be charged for the cost of an auxiliary aid or service needed for effective communication.

## V. VIDEO REMOTE INTERPRETING (VRI) SERVICES

A. The Sheriff's Office will maintain an account with a VRI service provider that ensures the on-demand immediate availability of certified sign language and oral interpreting services.

B. The VRI provider must ensure interpreters are able to sign to the deaf individual (or interpret orally to the person who speech reads) what is being said by the officer and be able to voice to the officer what is being signed or said by the deaf individual. Interpreters must also be able to interpret in the language the deaf person uses (e.g., American Sign Language or Signed English) and must be familiar with law enforcement terms and phrases.

C. Because a qualified interpreter must be able to interpret impartially, a family member, child, or friend of the individual who is deaf may not be qualified to render the necessary interpretation because of factors such as professional, emotional, or personal involvement, or considerations of confidentiality. Additionally, although a "qualified" interpreter may be certified, a certified interpreter is not necessarily "qualified," if he or she is not a good communications match for the deaf person (e.g., where the deaf person uses Signed English and the interpreter uses American Sign Language) or for the situation (e.g., where the interpreter is unfamiliar with law enforcement vocabulary).

## VI. TELETYPEWRITER (TTY) AND VIDEO RELAY SERVICES (VRS)

A. When a deaf or hard of hearing person is placed in situations where a nondisabled person would have access to a telephone, staff members must provide them the opportunity to place calls using a VRS or TTY.

B. At least one VRS compatible computer shall be located at all Sheriff's Office locations where victims, witnesses, suspects, or arrestees are brought or held by staff members.

C. Staff members must also accept telephone calls placed by persons who are deaf or hard of hearing through a Telecommunications Relay Service.

## VII. TECHNIQUES FOR OFFICERS TO COMMUNICATE EFFECTIVELY

A. Officers may utilize the following auxiliary aids, when available, to communicate effectively.

1. Use of a qualified oral or sign language interpreter

2. Use of gesture

3. Use of visual aids

4. Use of a notepad and pen or pencil

5. Use of a computer or typewriter

6. Use of an assistive listening system or device

7. Use of a teletypewriter (TTY)

B. Officers must review and have a working knowledge of the publication "*Communicating with People Who Are Deaf or Hard of Hearing: ADA Guide for Law Enforcement Officers*" *(Addendum A)*. This document reviews how officers should communicate effectively in the types of situations officers will encounter.

**Addendum A**

## U.S. Department of Justice Civil Rights Division Disability Rights Section

### Communicating with People Who Are Deaf or Hard of Hearing

ADA Guide for Law Enforcement Officers

As a law enforcement officer, you can expect to come into contact with people who are deaf or hard of hearing. It is estimated that up to nine percent of the population has some degree of hearing loss, and this percentage will increase as the population ages.

Under the Americans with Disabilities Act (ADA), people who are deaf or hard of hearing are entitled to the same services law enforcement provides to anyone else. They may not be excluded or segregated from services, be denied services, or otherwise be treated differently than other people. Law enforcement agencies must make efforts to ensure that their personnel communicate effectively with people whose disability affects hearing. This applies to both sworn and civilian personnel



A driver who is deaf writes on a pad of paper to communicate with an officer.

Under the Americans with Disabilities Act (ADA), people who are deaf or hard of hearing are entitled to the same services law enforcement provides to anyone else. They may not be excluded or segregated from services, be denied services, or otherwise be treated differently than other people. Law enforcement agencies must make efforts to ensure that their personnel communicate effectively with people whose disability affects hearing. This applies to both sworn and civilian personnel.

For further information on the Americans with Disabilities Act contact:

**ADA Website** www.ada.gov

**ADA Information Line**
800-514-0301 (voice)
800-514-0383 (TTY)

This pamphlet was developed by the U.S. Department of Justice for law enforcement personnel.
**Reproduction is encouraged**                                    January 2006

5

## What Situations Require an Interpreter?

Generally, interpreter services are not required for simple transactions – such as checking a license or giving directions to a location – or for urgent situations – such as responding to a violent crime in progress.

**Example:** An officer clocks a car on the highway going 15 miles per hour above the speed limit. The driver, who is deaf, is pulled over and is issued a noncriminal citation. The individual is able to understand the reason for the citation because the officer points out relevant information printed on the citation or written by the officer.

**Example:** An officer responds to an aggravated battery call and upon arriving at the scene observes a bleeding victim and an individual holding a weapon. Eyewitnesses observed the individual strike the victim. The individual with the weapon is deaf. Because the officer has probable cause to make a felony arrest without an interrogation, an interpreter is not necessary to carry out the arrest.

However, an interpreter may be needed in lengthy or complex transactions – such as interviewing a victim, witness, suspect, or arrestee – if the person being interviewed normally relies on sign language or speech reading to understand what others are saying.

**Example:** An officer responds to the scene of a domestic disturbance. The husband says the wife has been beating their children and he has been trying to restrain her. The wife is deaf. The officer begins questioning her by writing notes, but her response indicates a lack of comprehension. She requests a sign language interpreter. In this situation an interpreter should be called. If the woman's behavior is threatening, the officer can make an arrest and call for an interpreter to be available later at the booking station.

It is inappropriate to ask a family member or companion to interpret in a situation like this because emotional ties may interfere with the ability to interpret impartially.

**Example:** An officer responds to the scene of a car accident where a man has been seriously injured. The man is conscious, but is unable to comprehend the officer's questions because he is deaf. A family member who is present begins interpreting what the officer is saying.

A family member or companion may be used to interpret in a case like this, where the parties are willing, the need for information is urgent, and the questions are basic and uncomplicated. However, in general, do not expect or demand that a deaf person provide his or her own interpreter. As a rule, when interpreter service is needed, it must be provided by the agency.

Your agency has adopted a specific policy regarding communicating with people who are deaf or hard of hearing. It is important to become familiar with this policy.

Your agency's policy explains how to obtain interpreters or other communication aids and services when needed.

**Requirements for Effective Communication**

The ADA requires that:

- Law enforcement agencies must provide the communication aids and services needed to communicate effectively with people who are deaf or hard of hearing, except when a particular aid or service would result in an undue burden or a fundamental change in the nature of the law enforcement services being provided.
- Agencies must give primary consideration to providing the aid or service requested by the person with the hearing disability.

- Agencies cannot charge the person for the communication aids or services provided.

- Agencies do not have to provide personally prescribed devices such as hearing aids.

- When interpreters are needed, agencies must provide interpreters who can interpret effectively, accurately, and impartially.

- Only the head of the agency or his or her designee can make the determination that a particular aid or service would cause an undue burden or a fundamental change in the nature of the law enforcement services being

**Communicating with People who are Deaf or Hard of Hearing**

Officers may find a variety of communication aids and services useful in different situations.

- Speech supplemented by gestures and visual aids can be used in some cases.

- A pad and pencil, a word processor, or a typewriter can be used to exchange written notes.

- A teletypewriter (TTY, also known as a TDD) can be used to exchange written messages over the telephone.

- An assistive listening system or device to amplify sound can be used when speaking with a person who is hard of hearing.

- A sign language interpreter can be used when speaking with a person who knows sign language.

- An oral interpreter can be used when speaking with a person who has been trained to speech read (read lips). **Note:** Do not assume that speech reading will be effective in most situations. On average, only about one third of spoken words can be understood by speech reading.

The type of situation, as well as the individual's abilities, will determine which aid or service is needed to communicate effectively.

**Practical Suggestions for Communicating Effectively**

• Before speaking, get the person's attention with a wave of the hand or a gentle tap on the shoulder.

• Face the person and do not turn away while speaking.

• Try to converse in a well-lit area.

• Do not cover your mouth or chew gum.

• If a person is wearing a hearing aid, do not assume the individual can hear you.

• Minimize background noise and other distractions whenever possible.

• When you are communicating orally, speak slowly and distinctly. Use gestures and facial expressions to reinforce what you are saying.

• Use visual aids when possible, such as pointing to printed information on a citation or other document.

• Remember that only about one third of spoken words can be understood by speech reading.

• When communicating by writing notes, keep in mind that some individuals who use sign language may lack good English reading and writing skills.

• If someone with a hearing disability cannot understand  you, write a note to ask him or her what communication aid or service is needed.

• If a sign language interpreter is requested, be sure to ask which language the person uses. American Sign Language (ASL) and Signed English are the most common.

• When you are interviewing a witness or a suspect or engaging in any complex conversation with a person whose primary language is sign language, a qualified interpreter is usually needed to ensure effective communication.

• When using an interpreter, look at and speak directly to the deaf person, not to the interpreter.

• Talk at your normal rate, or slightly slower if you normally speak very fast.

• Only one person should speak at a time.

• Use short sentences and simple words.

• Do not use family members or children as interpreters.  They may lack the vocabulary or the impartiality needed to interpret effectively.

8